United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRIENDS OF OCEANO DUNES, INC.,                    No. C-11-1476 EMC

              Plaintiff,                          **ORDER GRANTING PLAINTIFF'S
                                                  MOTION FOR SUMMARY JUDGMENT
       v.                                         AND DENYING DEFENDANT'S
                                                  CROSS-MOTION FOR SUMMARY
KEN SALAZAR, *et al.*,                            JUDGMENT**

              Defendants.                         **(Docket No. 27, 28)**
_____/

       Plaintiff Friends of Oceano Dunes, Inc. ("FOOD") has filed suit against the federal

government, challenging the government's denial of a request for a fee waiver pursuant to the

Freedom of Information Act ("FOIA").  Currently pending before the Court are the parties' cross-

motions for summary judgment.  Having considered the parties' briefs and accompanying

submissions, as well as all evidence of record, the Court hereby **GRANTS** FOOD's motion and

**DENIES** the government's.

                            **I.    DISCUSSION**

A.     Legal Standard

       Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is genuine

only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of

United States District Court
For the Northern District of California

1  evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

2  the [nonmoving party]." *Id.* at 252.  At the summary judgment stage, evidence must be viewed in

3  the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the

4  nonmovant's favor. *See id.* at 255.

5      Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary

6  judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential

7  element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th

8  Cir. 1992).  In contrast, the defendant may prevail on a motion for summary judgment simply by

9  pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an

10  element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

11  B.    Agency Review

12      As noted above, § 552(a)(4)(A)(iii) – the fee waiver statute – provides as follows:

13          Documents shall be furnished without any charge or at a charge
            reduced below the fees established under clause (ii) if disclosure of the
14          information is in the public interest because it is likely to contribute
            significantly to public understanding of the operations or activities of
15          the government *and* is not primarily in the commercial interest of the
            requester.

16

17  5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added).

18      An agency's fee waiver decision is subject to de novo review, and not the typical arbitrary

19  and capricious standard.  Section 552(a)(4)(A)(vii) specifies: "In any action by a requester regarding

20  the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, That

21  the court's review of the matter shall be limited to the record before the agency." *Id.* §

22  552(a)(4)(A)(vii) (emphasis in original).  Consistent with this statute, courts have noted that,

23  although FOIA requires agencies such as DOI to establish guidelines for determining when fees

24  should be waived (or reduced), *see* 5 U.S.C. § 552(a)(4)(A)(i); 43 C.F.R. Part 2 Appendix D, a court

25  owes no particular deference to an agency's interpretation of FOIA. *See Judicial Watch, Inc. v.*

26  *Rossotti*, 326 F.3d 1309, 1313 (D.C. Cir. 2003) ("emphasiz[ing] that we owe no particular deference

27  to the IRS's interpretation of FOIA").

28

United States District Court

For the Northern District of California

1    Not only is a court's review limited to the record before the agency but also a court is not

2  permitted to "consider new reasons offered by the agency not raised in the denial letter." *Friends of*

3  *the Coast Fork v. United States DOI*, 110 F.3d 53, 55 (9th Cir. 1997).  That is, "the agency must

4  stand on whatever reasons for denial it gave in the administrative proceeding." *Id.*  Thus, if a

5  requester meets "the initial burden of satisfying the statutory and regulatory standards for a fee

6  waiver" and the agency's reasons for denial – as stated in its denial letter – are inadequate, "then a

7  full fee waiver is in order." *Id.*

8    In the instant case, the Court concludes that FOOD has met its burden on both the

9  "commercial interest" prong and the "contribution to the public understanding" prong.  The Court

10  further concludes that the agency's reasons for denial of FOOD's fee waiver are inadequate.

11  Accordingly, a full fee waiver is, as the Ninth Circuit has directed, in order.

12  C.    Commercial Interest Prong

13    The Ninth Circuit has expressly stated that § 552(a)(4)(A)(iii) "'is to be liberally construed in

14  favor of waivers for noncommercial requesters.'" *McClellan Ecological Seepage Situation v.*

15  *Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986)).

16  However, the Ninth Circuit has further noted – in explicit terms – that a public interest group must

17  still meet the statutory standard for a waiver and is *not* entitled to any presumption that there should

18  be a fee waiver.  *See id.*  Therefore, even a public interest group such as FOOD must establish that

19  disclosure of the information requested is not primarily in its commercial interest.  Under Ninth

20  Circuit law, information is deemed commercial if "it relates to commerce, trade, or profit." *Id.* at

21  1285.

22    In the instant case, the Court does not agree with FOOD's position that its mere status as a

23  nonprofit is enough to establish that disclosure of the information requested was not primarily in its

24  commercial interest.  *See* Mot. at 12 (arguing that, because FOOD is a nonprofit, "the disclosure of

25  governmental records could *never* be 'primarily in the commercial interest' of [FOOD]").  FOOD's

26  position is inconsistent the *McClellan*, where the Ninth Circuit held that even a public interest group

27  must meet the statutory requirement for a fee waiver.  It is also inconsistent with other case law, for

28  example, *Judicial Watch of Florida v. United States Justice Department*, 1998 U.S. Dist. LEXIS

3

**United States District Court**
For the Northern District of California

1  23441 (D.D.C. Aug. 25, 1998), where a D.C. district court pointed out that "profit-making as well as

2  not-for-profit organizations may have a commercial interest in the requested documents.  A

3  requestor's non-profit status does not determine the character of the information it requests." *Id.* at

4  \*10; *see also Votehemp, Inc. v. DEA*, 237 F. Supp. 2d 55, 64-65 (D.D.C. 2002) (indicating

5  agreement with a DOJ FOIA regulation, 28 C.F.R. § 16.11, that an agency is entitled to consider the

6  commercial interest of a requester *or* a person on whose behalf the requester may be asking).  This

7  approach makes sense because, otherwise, all nonprofits would automatically be entitled to fee

8  waivers.  There is nothing in the language of § 552(a)(4)(A)(iii) that suggests that this is what

9  Congress intended.  Nor has FOOD pointed to any legislative history establishing such was

10  Congress's intent.

11       While the Court rejects FOOD's position, it nonetheless concludes that FOOD satisfied its

12  burden on the "commercial interest" prong because, in papers submitted to the government, FOOD

13  did provide information indicating that disclosure of the information requested was not primarily in

14  its commercial interest.  For example, in its second fee waiver request, FOOD asserted that "[t]he

15  critical habitat designation referenced in our Freedom of Information ('FOIA') request *may impact*

16  *recreational opportunities* for [FOOD's] 28,000 members and users of the Oceano Dunes State

17  Vehicular Recreation Area."  AR 14 (emphasis added).  FOOD repeated this point in a later part of

18  the same fee waiver request. *See* AR 18 (stating that, "[a]s a public watchdog organization, [FOOD]

19  also provides insight, guidance and information on issues of import to its 28,000 members, such as

20  the requested records that *can impact their recreational opportunities*, and to the public at-large,

21  including the [Fish and Wildlife Service]") (emphasis added).  In addition, its administrative appeal

22  of the fee waiver denial, FOOD referred several times to the impact on its members and beach users'

23  recreational opportunities. *See, e.g.*, AR 20 (stating that "[t]he critical habitat designation may

24  impact recreational opportunities for [FOOD's] 28,000 members and users"); AR 25 (stating that,

25  "[a]s a public watchdog organization, [FOOD] provides insight, guidance and information on issues

26  of import to its 28,000 members, such as the requested records that can impact their recreational

27  opportunities, and to the public at-large, including the [Fish and Wildlife Service]"); AR 27 (stating

28

United States District Court

For the Northern District of California

1   that "Oceano Dunes users 'typically do not have the time or ability to ferret out the agency's

2   activities that ultimately end up directly affecting their recreational interests'").

3        The Court acknowledges that these points were made by FOOD not in conjunction with its

4   discussion of the commercial interest prong but rather in conjunction with its discussion of factors

5   relevant to the contribution to the public understanding prong.  This fact makes resolution of this

6   case a closer call, and the Court emphasizes that it is not unsympathetic to the government's position

7   that FOOD appeared to rest solely on  its status as a nonprofit in support of its argument that it had

8   satisfied the commercial interest prong.  However, the commercial interest and contribution to

9   public understanding prongs – though formally distinct inquiries – are somewhat intertwined.

10  Therefore, the two prongs cannot be viewed in isolation.  Moreover, this is not a situation where the

11  government had to parse through a lengthy, detailed, and/or complicated argument in support of fee

12  waiver; FOOD's substantive assertions, however characterized, were plainly made.  Finally, the

13  Court notes that the government did not tell FOOD – in express terms – that its status as a nonprofit

14  was insufficient to satisfy the commercial interest prong, which would have given clear notice to

15  FOOD what deficiency needed to be addressed.  *Cf. Friends*, 110 F.3d at 55 (stating that

16  government's denial letter must be reasonably calculated to put requester on notice as to deficiencies

17  in requester's case); *see also McClellan*, 835 F.2d at 1286 (stating that agency should be able to

18  request at least some additional information from person seeking fee waiver).

19       Accordingly, the Court concludes that FOOD satisfied its initial burden with respect to the

20  commercial interest prong and turns to the government's reasons for denial of the fee waiver request

21  as stated in its denial letter.  In its denial letter, the government stated that "we have no information

22  to agree or disagree that disclosure would be primarily in your commercial interest."  AR 7.  For the

23  reasons stated above, the Court finds this reason inadequate.

24  D.    Contribution to Public Understanding Prong

25       In addition to showing that the disclosure of the information requested was not primarily in

26  its commercial interest, FOOD had to establish that the disclosure was likely to contribute

27  significantly to public understanding of the operations or activities of the government.  In its letter

28  denying the fee waiver, the government admitted that "the requested records involve[d] the

5

**United States District Court**
For the Northern District of California

1 operations or activities of the Federal Government." AR 7. Thus, the Court need only consider

2 whether disclosure was likely to contribute significantly to public understanding.

3      Viewing the totality of the statements made in the fee waiver requests and administrative

4 appeal, the Court concludes that FOOD met its initial burden on this prong. FOOD sought

5 disclosure of information related to a proposed rule on critical habitat designation for the plover and

6 intended to analyze and distribute the results of its analysis to a reasonably broad segment of the

7 interested public.

8      None of the government's reasons for denial, as stated in its denial letter, are adequate. For

9 example:

10 •      According to the government, "[d]isseminating the information to the [FOOD] members and

11      posting the information on the [FOOD] website does not address how the public at large will

12      receive this information." AR 7. But, as FOOD argues in its papers, the statute has been

13      satisfied so long as a requester has "the capacity to reach a *reasonably broad segment of the*

14      *interested public*." *Community Legal Servs., Inc. v. United States HUD*, 405 F. Supp. 2d

15      553, 557 (E.D. Pa. 2005) (emphasis added). DOI's own FOIA regulation takes this

16      approach. *See* 43 CFR Part 2 Appendix D (b)(2)(ii) (asking "how will disclosure of the

17      requested records contribute to the understanding of the public at large *or* a reasonably broad

18      audience of persons interested in the subject?") (emphasis added). The underlying reasoning

19      is that "'[p]ublic understanding is enhanced when information is disclosed to the subset of

20      the public most interested, concerned, or affected by a particular action or matter.'"

21      *Community Legal Servs.*, 405 F. Supp. 2d at 556 (quoting 32 Cong. Rec. S14,270-01) (daily

22      ed. Sept. 30, 1986)). Notably, "in *Forest Guardians* [*v. DOI*, 416 F.3d 1173 (10th Cir.

23      2005)], the Tenth Circuit was satisfied that the requester, a non-profit organization, published

24      an online newsletter and intended to establish a website containing the requested

25      information. [Also,] [i]n *Judicial Watch, Inc. v. U.S. Department of Justice*, 185 F. Supp. 2d

26      54 (D.D.C. 2002), the D.C. Circuit found it sufficient that the requester, a non-profit

27      organization, named several mechanisms for disseminating information, including allowing

28      reporters to inspect its documents, blast faxing press releases, maintaining a website and

**United States District Court**
For the Northern District of California

1      appearing on radio and television programs." *Id.* at 557 (internal quotation marks omitted).

2      In the instant case, FOOD intends to disseminate via its website and emails, which is

3      comparable to *Forest Guardians* and *Judicial Watch*.

4   •  The government also asserted: "[Y]ou have not identified your vocation, qualifications, and

5      expertise regarding the requested information (e.g., whether you are affiliated with a

6      newspaper, college or university or have previously published articles, books, etc.) to support

7      your ability to increase public awareness." AR 7-8.  A requester's ability to understand and

8      process the information requested is a factor that the government may consider in

9      determining whether disclosure is likely to contribute significantly to public understanding.

10     *See McClellan*, 835 F.2d at 1286 (noting that "the request gives no indication of requesters'

11     ability to understand and process this information").  But here FOOD told the government

12     that it had hired an attorney to help understand and process the information requested and

13     explained that the attorney was qualified to do so because he had experience dealing with

14     plover critical habitat designations. *See* AR 4.  FOOD also told the government that its own

15     board members "have years of experience in reviewing and analyzing plover conservation

16     programs and regulations and indeed have assisted State Parks with its very successful plover

17     conservation program at Oceano Dunes." AR 17.  While arguably this claim by FOOD is

18     lacking in some specificity, there are facts which indicate the claim is not without basis – in

19     particular, the fact that, previously, FOOD participated in the 2005 rule-making by

20     submitting comments to the agency to which the agency provided a response.  The above

21     circumstances are sufficiently comparable to those in which courts have found that a

22     requester is in a position to analyze the information requested. *See, e.g.*, *Southern Utah*

23     *Wilderness Alliance v. United States Bureau of Land Mgmt.*, 402 F. Supp. 2d 82, 85-88

24     (D.D.C. 2005) (concluding that requester presented agency with sufficient evidence to meet

25     its burden of showing expertise in analyzing and disseminating records pertaining to cultural

26     resources – *e.g.*, by submitting comments to agency about impacts to cultural resources and

27     by issuing a report on cultural resources); *Western Watersheds Proj. v. Brown*, 318 F. Supp.

28     2d 1036, 1040 & n.3 (D. Idaho 2004) (finding that requester presented evidence to the

**United States District Court**
For the Northern District of California

1   agency that "it had in the past been able to analyze the grazing management strategies

2   employed by the [agency] and convey them to the public" – *e.g.*, requester "presented

3   evidence that one of its founding members had taught high school classes on this subject").

4   •   Finally, the government asserted: "Simply stating that you are 'qualified to understand,

5   analyze, and digest the information contained in the requested public records in a manner to

6   increase public awareness,' does not explain *how* disclosure will increase the level of public

7   understanding that existed prior to disclosure." AR 8 (emphasis added). But FOOD did

8   indicate that disclosure would likely contribute significantly to public understanding because

9   it was asking for, *inter alia*, new information that FWS was relying on in its rule-making.

10   The Ninth Circuit has stated that information has more potential for contribution to public

11   understanding where it "is new and supports public oversight of agency operations."

12   *McClellan*, 835 F.2d at 1286.

13   ## II.   CONCLUSION

14   Because FOOD has met its initial burden of satisfying the statutory and regulatory standards

15   for a fee waiver and the government's reasons for denial – as stated in its denial letter – are

16   inadequate, the Court concludes that a full fee waiver is in order. Accordingly, the Court hereby

17   grants FOOD's motion for summary judgment and denies the government's cross-motion. The

18   Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file

19   in this case.

20   This order disposes of Docket Nos. 27 and 28.

21

22   IT IS SO ORDERED.

23

24   Dated:  December 22, 2011

25

26   _____
     EDWARD M. CHEN
     United States District Judge

27

28

8